**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| ROBERT R. LEWIS,<br>     *Plaintiff,*<br><br>     v.<br><br>ASSURANT, INC. and AMERICAN<br>SECURITY INSURANCE COMPANY,<br>     *Defendants.* | No. 3:21-cv-01539 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS AND MOTION TO
STAY DISCOVERY**

Robert R. Lewis, an attorney proceeding *pro se*, has sued American Security Insurance

Company ("American Security") and its parent company, Assurant, Inc. ("Assurant"), in

connection with flood insurance purchased on Mr. Lewis's behalf by his mortgage loan servicer,

M&T Bank ("M&T"). Mr. Lewis alleges that American Security and Assurant violated the

Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade

Practices Act ("CUTPA") by engaging in a kickback scheme with M&T and by filing untrue,

deceptive, or misleading letters with the Connecticut Insurance Department. Compl., ECF No. 1-

1 (Nov. 18, 2021).

Mr. Lewis filed a prior lawsuit against American Security and several other defendants in

2020, alleging state and federal claims related to the same kickback scheme. *Lewis v. M&T Bank

Corp.*, No. 3:20-cv-00552 (JCH), 2021 WL 1056827 (D. Conn. Mar. 19, 2021). Assurant was

not named as a defendant in that action. On March 19, 2021, the court dismissed Mr. Lewis's

Complaint for failure to state a claim. *Id.* at *1. The Second Circuit affirmed in a summary order.

*Lewis v. M&T Bank*, No. 21-933, 2022 WL 775758 (2d Cir. Mar. 15, 2022).

1

Defendants have moved to dismiss the current Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Mot. to Dismiss, ECF No. 12 (Nov. 19, 2021). Assurant also seeks dismissal under Rule 12(b)(2), arguing that this Court lacks personal jurisdiction. *Id.*; Mem. of Law in Supp. of Mot. to Dismiss at 21, ECF No. 12-1 (Nov. 19, 2021) ("Mem.").

Defendants have also filed a motion to stay discovery pending the Court's resolution of the motion to dismiss. Mot. to Stay Disc. and Rule 26(f) Obligations, ECF No. 17 (Nov. 30, 2021) ("Mot. to Stay").

For the following reasons, the motion to dismiss is **GRANTED** with prejudice, and the motion to stay discovery is **DENIED as moot**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

#### 1.  The Kickback Scheme

The claims in this case arise from an alleged kickback scheme between Defendants and M&T involving residential flood insurance. Mr. Lewis's mortgage agreement requires that he maintain flood insurance to protect the lender's interest in the property. Notice of Removal Ex. D ¶ 38, ECF No. 1-4 (Nov. 18, 2021) ("Prior Compl."). If Mr. Lewis fails to do so, the lender, M&T, is permitted to purchase flood insurance on Mr. Lewis's behalf and charge him for the cost of the coverage. *Id.*; Compl. ¶ 10. In 2017, 2018, and 2019, M&T purchased from American Security this type of "force-placed" flood insurance on Mr. Lewis's property. Prior Compl. ¶ 39.

According to Mr. Lewis, Defendants and M&T Bank arranged to artificially inflate the cost of this insurance. M&T allegedly agreed to purchase force-placed insurance exclusively from American Security and Assurant. Compl. ¶ 8. In exchange, American Security and

Assurant allegedly paid M&T kickbacks that were disguised as commissions, reinsurance payments, expense reimbursements, and mortgage servicing functions provided to M&T below cost. *Id.* ¶¶ 12–14, 17. Mr. Lewis alleges that these kickbacks were effectively a rebate, reducing the cost that M&T pays for force-placed insurance. *Id.* ¶ 16. But instead of passing these rebates on to borrowers like Mr. Lewis, M&T allegedly charged the inflated cost of the force-placed insurance and retained the profits for itself. *Id.*

### 2.   The Prior Action

On April 24, 2020, Mr. Lewis filed a Complaint against M&T, American Security, and several other Assurant subsidiaries. *Lewis*, 2021 WL 1056827, at *1, *3. He asserted claims against American Security for fraud, tortious interference with a business relationship, and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* *Lewis*, 2021 WL 1056827, at *3. The defendants in that case moved to dismiss on the basis of the "filed rate doctrine," under which "any filed rate—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 261 (2d Cir. 2015) (internal quotation marks omitted). In response, Mr. Lewis argued that the filed rate doctrine did not apply because the insurer defendants did not have any applicable rate on file with the Connecticut Insurance Department when M&T purchased force-placed insurance on Mr. Lewis's behalf. *Lewis*, 2021 WL 1056827, at *5.

In support of this argument, Mr. Lewis pointed to an April 11, 2017, letter sent by American Security to the Connecticut Insurance Department requesting withdrawal of all rates for the insurer's "Residential Mortgage Service Program." *Id.* He argued that this letter withdrew American Security's flood insurance rates before M&T first purchased force-placed insurance in

June 2017. *Id.* The Court disagreed, concluding that the "Residential Mortgage Service Program" referenced in the letter was "separate and distinct" from the "Residential and Commercial Flood Program" under which M&T purchased forced-place insurance on Mr. Lewis's property. *Id.* at *6. American Security had approved rates on file for the Residential and Commercial Flood Program, and it had not withdrawn these rates. *Id.* at *6. Thus, the filed rate doctrine applied and barred Mr. Lewis's claims. *Id.* at *7. The Second Circuit affirmed on the same grounds. 2022 WL 775758, at *2.

In his current Complaint, Mr. Lewis alleges that he first learned of the April 11, 2017, letter—along with an April 20, 2017, rate withdrawal letter for the "Mortgage Service Program-Commercial"—on April 20, 2020. Compl. ¶¶ 33–36. He further alleges that he relied on these letters in raising his failed argument that American Security had withdrawn the filed rates related to his own force-placed flood insurance. *See id.* ¶ 37.

### B.  Procedural History

On October 29, 2021, Mr. Lewis filed the current Complaint in Connecticut Superior Court at New Haven. Compl. at 2.

On November 18, 2021, American Security and Assurant removed to this Court on the basis of diversity jurisdiction. Notice of Removal, ECF No. 1 (Nov. 18, 2021).

The next day, American Security and Assurant moved to dismiss the Complaint for failure to state a claim, arguing that the claims were barred by the doctrines of claim and issue preclusion and that Mr. Lewis failed to allege a plausible claim under CUIPA and CUTPA. Mot. to Dismiss; Mem. at 1. Defendants' motion also sought dismissal for lack of personal jurisdiction with respect to Assurant. Mem. at 2.

On November 30, 2021, American Security and Assurant also filed a motion to stay discovery and Rule 26(f) obligations. Mot. to Stay.

Mr. Lewis opposed both motions.

On December 9, 2021, he filed an opposition to the motion to dismiss. Mem. of Law in Opp'n to Mot. to Dismiss, ECF No. 18 (Dec. 9, 2021) ("Opp'n").

On December 15, 2021, he filed an opposition to the motion to stay. Mem. of Law in Opp'n to Mot. to Stay Disc. and Rule 26(f) Obligations, ECF No. 19 (Dec. 15, 2019).

On December 17, 2021, American Security and Assurant replied to both of Mr. Lewis's oppositions. Reply Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 20 (Dec. 17, 2021) ("Reply"); Reply Mem. of Law in Supp. of Mot. to Stay Disc. and Rule 26(f) Obligations, ECF No. 21 (Dec. 17, 2021).

On March 16, 2022, American Security and Assurant filed a notice of supplemental authority advising the Court of the Second Circuit's decision in the prior action. Notice of Suppl. Authority, ECF No. 22 (Mar. 16, 2022).

The next day, Mr. Lewis filed a reply to the notice of supplemental authority. Reply to Notice of Suppl. Authority, ECF No. 23 (Mar. 17, 2022).

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). Where, as here, the parties have not engaged in discovery on the jurisdictional question, the plaintiff need only make a *prima facie* showing that jurisdiction exists. *Licci ex rel. Licci v.*

*Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ("Where a 'court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.'" (alteration in original) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981))).

"This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci*, 673 F.3d at 59 (internal quotation marks omitted); *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-CV-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff." (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986))), *aff'd*, 438 F. App'x 27 (2d Cir. 2011) (summary order), *as amended* (Sept. 23, 2011).

A court considers the facts as they existed when the plaintiff filed the complaint. *See Glenwood Sys.*, 2010 WL 11527383, at *2 (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

### B.  Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a

complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider

7

"matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### C.  The Doctrine of Res Judicata

In cases involving prior litigation between or among the parties, a court must determine if it is precluded from adjudicating some or all of the claims because of previous rulings on the merits of those claims. "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Together, the doctrines of claim and issue preclusion "are designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998) (alteration in original) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

The preclusive effect of a prior federal court judgment depends on the basis for jurisdiction in the prior action. For judgments in federal question cases, courts apply "'uniform federal rule[s]' of res judicata." *Taylor*, 553 U.S. at 891 (alteration in original). "For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Id.* at 891 n.4. In the prior action, this Court had both federal question and diversity jurisdiction. Prior Compl. ¶ 12. Because Connecticut and federal preclusion rules are "substantially similar," however, the choice of law does not affect the outcome of this case. *Jaeger v. Cellco P'ship*, 936 F. Supp. 2d 87, 94 n.1 (D. Conn.) ("Here, because the result would be the same under either federal or Connecticut law, I will analyze the preclusive effect of the prior federal and state court actions together."), *aff'd*, 542 F. App'x 78 (2d Cir. 2013).

8

The doctrine of claim preclusion prevents a claim from being relitigated if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018) (internal quotation marks omitted). Connecticut law also requires "an adequate opportunity to fully and fairly litigate the claim." *Jaeger*, 936 F. Supp. 2d at 94 n.1 (internal quotation marks omitted).

The related doctrine of issue preclusion "bars a party from raising an issue of law or fact in a second suit that the party had a full and fair opportunity to litigate . . . in [a] prior proceeding and where the decision of the issue was necessary to support a valid and final judgment on the merits in the first action." *Irish Lesbian & Gay Org.*, 143 F.3d at 644 (alterations in original) (internal citations and quotation marks omitted).

*Res judicata* is an affirmative defense, and the party asserting the defense bears the burden of establishing that it applies to the current case. *Ventres v. Goodspeed Airport, LLC*, 301 Conn. 194 (2011). Nonetheless, a *res judicata* challenge can be raised on a motion to dismiss for failure to state a claim if "all relevant facts are shown by the court's own records." *AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 72 (2d Cir. 2003) (quoting *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)). In considering a *res judicata* defense on a Rule 12(b)(6) motion, "a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court." *Chien v. Skystar Bio Pharm. Co.*, 623 F. Supp. 2d 255, 260 (D. Conn. 2009) (citing *AmBase*, 326 F.3d at 72–73), *aff'd*, 378 F. App'x 109 (2d Cir. 2010).

III.    **DISCUSSION**

American Security and Assurant both move for dismissal under Rule 12(b)(6). Assurant also seeks dismissal under Rule 12(b)(2).

The Complaint sets forth two distinct theories of unfair or deceptive acts or practices under CUIPA and CUTPA.

First, American Security and Assurant allegedly engaged in "wrongful and unfair insurance practices and misrepresentations or omissions with respect to [their] forced placed insurance policies." Compl. ¶ 32. These allegations refer to the kickback scheme described above.

Second, Mr. Lewis asserts that Defendants "deliberately filed letters with the Connecticut Insurance Department that were untrue, deceptive or misleading." *Id.* In this theory, Mr. Lewis alleges that the 2017 rate withdrawal letters were misleading because they referenced programs with names similar to the program under which his flood insurance was issue.[1]

American Security and Assurant raise four arguments in support of their motion to dismiss: (1) Mr. Lewis's kickback-related claims are barred by claim preclusion; (2) Mr. Lewis's letter-related claims are barred by issue-preclusion; (3) Mr. Lewis fails to state a claim under CUIPA and CUTPA; and (4) this Court lacks personal jurisdiction over Assurant. Mem. at 2.

---

[1] In his opposition to the motion to dismiss, Mr. Lewis appears to disclaim reliance on the kickback scheme at the heart of the first theory. He states that "the instant complaint provides a more detailed description of the corrupt scheme solely for the purpose of providing background information." Opp'n at 13. The Court, however, will address both theories of unfair acts and practices. The Complaint describes both the kickback-related activities and the letter-related activities as "deceitful," "unfair," or "deceptive" practices, mirroring the language of CUIPA and CUTPA. Compl. ¶¶ 30–32. Moreover, Mr. Lewis argues in his opposition that claim preclusion does not apply because he learned of Defendants' "nationwide misconduct" only after filing the first action. Opp'n at 16. This nationwide misconduct relates only to the kickback scheme, indicating that Mr. Lewis continues to assert claims related to the first theory.

The Court concludes that it lacks personal jurisdiction over Assurant, that the kickback-related theory is barred by claim preclusion, and that the letter-related theory fails to state a claim under CUIPA and CUTPA.

Accordingly, the Court will grant the motion to dismiss.

### A.  Personal Jurisdiction

Assurant contends that the Court lacks general personal jurisdiction because Assurant is a Delaware corporation with its principal place of business in New York. Mem. at 23. Assurant also contends that it is not subject to specific personal jurisdiction because Mr. Lewis has not alleged any suit-related contacts with Connecticut. *Id.* at 24. In support of this argument, Assurant submitted a declaration from Mariana Wisk, a Senior Vice President and Corporate Secretary for Assurant, which states that Assurant has no employees of its own, does not sell any goods or services in Connecticut, and has no involvement in the daily decision-making of its subsidiary, American Security. Wisk Decl. at 1–2, ECF No. 12-3 (Nov. 19, 2021).

Mr. Lewis does not dispute that the Court lacks general personal jurisdiction. In support of his claim for specific personal jurisdiction, he argues that the statements in the Wisk Declaration are belied by Assurant's Form 10k Annual Report. Opp'n at 8. The Annual Report states that Assurant provides lender-placed flood insurance and had approximately 14,100 employees as of December 31, 2020. *Id.* at 9. "Most significantly," Mr. Lewis contends, Assurant's Annual Report "acknowledges the extent to which their insurance business is subject to regulation." *Id.*

The Court disagrees.

The statements in the annual report do not show that Assurant itself does business in Connecticut. As Assurant points out, the Report states that "[u]nless the context otherwise

requires, references to the term 'Assurant,' the 'Company,' 'we,' 'us' and 'our' refer to Assurant, Inc's consolidated operations." Reply at 7–8 (quoting Lewis Decl. Ex. 2 at 10, ECF No. 18-1). Thus, the Report's statements regarding Assurant's activities and employees do not contradict the statements in the Wisk Declaration. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (finding that a parent's statements in its annual report referring to "our" and "the company as a whole" did not establish sufficient control over the subsidiary to support personal jurisdiction over the parent).

Mr. Lewis's arguments based on state insurance regulation are also unavailing. He contends that "the mere fact the lead states and participating jurisdictions including Connecticut [were] holding Assurant, Inc., the parent company responsible for the actions of its subsidiaries demonstrates a clear piercing of the 'corporate veil' and demonstration that Assurant, Inc. was and is the alter ego of its subsidiaries included in the examination, one of which is defendant American Security Insurance Co." Opp'n at 10.

Similarly, Mr. Lewis argues that Assurant's participation without objection in a multistate investigation by insurance regulators should have led it to anticipate being haled into court in one of the investigating states. *Id.* at 12. But the existence of a regulatory investigation and Assurant's consent to a settlement agreement do not establish that Assurant itself "expressly aimed its conduct" at Connecticut or the other investigating jurisdictions. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018) (noting that out-of-forum conduct that causes in-forum effects may support personal jurisdiction only if the defendant "expressly aimed its conduct at the forum"). Because Assurant's settlement with regulators was "the result of negotiations and not adjudication," it is "not a basis for imputing specific conduct" to Assurant. *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 559

(S.D.N.Y. 2018) (dismissing antitrust claims against a defendant for failure to allege sufficient actual involvement).

Accordingly, the Court will grant Assurant's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

### B. Claim Preclusion

American Securities and Assurant contend that each element of a claim preclusion defense is met with respect to Mr. Lewis's kickback-related claims. Mem. at 11. They point out that American Securities was itself a party to the prior action and that Assurant is in privity with American Securities, its wholly owned subsidiary. *Id.* at 12–13. Defendants also argue that claim preclusion applies even though the CUIPA and CUTPA claims asserted in the current Complaint differ from the causes of action alleged in the prior complaint. *Id.* at 13–14.

In response, Mr. Lewis argues that claim preclusion does not apply because his current claims arose "after the prior action was commenced and finally adjudicated." Opp'n at 13. He contends that his reliance on the 2017 withdrawal letters caused damages in the form of costs related to the prior action. *Id.* at 15. Thus, Mr. Lewis suggests that his current letter-related claim arose as a result of this Court's dismissal of his claim in the prior action. With respect to his kickback-related claims, Mr. Lewis argues that he could not have raised in the prior action the specific instances of Defendants' misconduct in other states. *Id.* at 16.

The Court disagrees.

As a threshold matter, American Security and Assurant do not argue that Mr. Lewis's withdrawal letter-related claims are barred by claim preclusion. Thus, the Court need not consider Mr. Lewis's argument with respect to these claims.

Mr. Lewis's kickback-related claims, however, are barred by claim preclusion. The Court agrees with American Security and Assurant that each element is met and rejects Mr. Lewis's argument that his current claim arose after the prior action.

First, the prior action was adjudicated "on the merits." *Soules*, 882 F.3d at 55. For the purposes of claim preclusion, "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'" *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981).

Second, the prior action "involved the plaintiffs or those in privity with them." *Soules*, 882 F.3d at 55. Both complaints named Mr. Lewis as the sole plaintiff.

Third, the claims asserted in the current action "were, or could have been, raised in the prior action." *Id.* Both Connecticut and federal law apply a "transactional test" to determine whether a claim was raised in a prior action. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (noting that "whether two actions arise from the same transaction or claim" depends on "whether the underlying facts are related in time, space, origin, or motivation" (internal quotation marks omitted)). Thus, the prior action and the current action may involve the same claim even though there was no overlap between the specific causes of action asserted in each complaint. In both actions, Mr. Lewis's kickback-related claims arose out of the same forced purchases of flood insurance and involved the same allegedly deceptive arrangement between American Security, Assurant, and M&T.

Mr. Lewis's argument that he could not have raised specific instances of nationwide misconduct in the prior action does not distinguish his current kickback-related claims from his prior ones.[2] CUTPA authorizes a private right of action only for damages incurred by the

---

[2] The premise that Mr. Lewis could not have raised these other instances of misconduct in the prior action is itself questionable. The Complaint's descriptions of misconduct in other jurisdictions appears to be drawn from a report

individual plaintiff based on unfair or deceptive trade practices in Connecticut. Conn. Gen. Stat. §§ 42-110a(4), 42-110g(a). Mr. Lewis cannot predicate a new and separate cause of action on Defendants' alleged misconduct in other states.

Mr. Lewis's decision to name Assurant as a new Defendant in the current action also does not defeat the claim preclusion defense. Ordinarily, claims against different defendants— even those related to the same injury—are regarded as separate for preclusion purposes. *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367 (2d Cir. 1995) ("When a litigant files consecutive lawsuits against separate parties for the same injury, the entry of a judgment in the prior action does not bar the claims against other potentially liable parties."). This rule does not apply, however, when the defendants are in privity. *See id.* ("In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion."). Mr. Lewis does not contest that Assurant is in privity with its wholly owned subsidiary, American Security. *See In re Teltronics Servs., Inc.*, 762 F.2d 185, 191 (2d Cir. 1985) (granting a claim preclusion defense to a current defendant who was the successor by merger to the wholly owned subsidiary of a defendant in the prior action).

Finally, Mr. Lewis had an "an adequate opportunity to fully and fairly litigate the claim" in the prior action, as required under Connecticut law. *Jaeger*, 936 F. Supp. 2d at 94 n.1 (internal quotation marks omitted). The court held oral argument on the defendants' motion to dismiss the prior complaint and invited supplemental briefing from the parties after that hearing. *Lewis*, 2021

---

issued by the Multistate Targeted Conduct Examination against Assurant and its subsidiaries. *See* Compl. Ex. 1 at 19–50. This report was issued in July 2017, nearly three years before Mr. Lewis filed his prior complaint. *Id.* at 19.

WL 1056827, at *3. Mr. Lewis therefore had a sufficient opportunity to contest the defendants' argument in that case that the filed rate doctrine barred his claims.

Accordingly, American Security and Assurant have established that claim preclusion applies, and the Court will grant their motion to dismiss Mr. Lewis's kickback-related claims.

### C.  The Sufficiency of the CUIPA and CUTPA Claims

CUTPA requires that "[n]o person shall engage in . . . unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). To enforce this mandate, the statute authorizes a cause of action for "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b." *Id.* § 42-110g(a). When, as here, the plaintiff seeks money damages, CUTPA requires that the prohibited act was "the proximate cause of a harm to the plaintiff." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 218 (2008) (*Artie's I*) (internal quotation marks omitted). "The question to be asked in ascertaining whether proximate cause exists is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's act." *Id.* (internal quotation marks omitted).

CUIPA does not itself authorize a private right of action for unfair and deceptive insurance practices. *See Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.* , 317 Conn. 602, 623 (2015) (*Artie's II*). Instead, a plaintiff may bring a claim under CUTPA "to enforce alleged CUIPA violations." *Kim v. State Farm Fire & Cas. Co.*, No. 3:15-cv-879 (VLB), 2015 WL 6675532, at *5 (D. Conn. Oct. 30, 2015) (quoting *Mead v. Burns*, 199 Conn. 651, 663 (1986)).

Because Mr. Lewis's kickback-related claims are barred by claim preclusion, the Court will consider his CUIPA and CUTPA claims only as they relate to the 2017 rate withdrawal letters. Defendants argue that Mr. Lewis's claims fail because he does not explain how the rate withdrawal letters caused him an ascertainable loss. Mem. at 19. According to American

Security and Assurant, Mr. Lewis has not alleged what he did in reliance on those letters or how this reliance caused him monetary losses. *Id.* at 8.

In response, Mr. Lewis contends that his allegations are sufficient because he relied on the letters "as establishing that there were no filed rates" when M&T began purchasing flood insurance from American Security in 2017. Opp'n at 2–3. Mr. Lewis also argues that his ascertainable damages include his costs in the prior action and punitive damages in the present action. *Id.* at 15.

The Court disagrees.

Mr. Lewis alleges that he discovered the existence of the rate withdrawal letters in 2020, shortly before filing his prior complaint. Compl. ¶ 33. He appears to argue that these letters caused him to believe that his prior causes of action were not barred by the filed rate doctrine. Thus, his current rate withdrawal letter claims seem to rest on the premise that Mr. Lewis would not have spent money to bring the prior action if the 2017 letters had not misled him into believing he had valid claims. Under this theory, Mr. Lewis's injury accrued when this Court determined that the filed rate doctrine did, in fact, bar his claims. *See* Opp'n at 3 ("Plaintiff's claim in the instant action only arose after the Court rendered its decision asserting there were other documents from 1996 indicating that there were applicable rates on file with the Connecticut Insurance Department that created an issue regarding the truth and accuracy of the withdrawal filings made in 2017.").

But Mr. Lewis's alleged harm was not proximately caused by American Security's actions. American Security's use of similar program names in its correspondence with the Connecticut Insurance Department—not with Mr. Lewis himself—did not create a "foreseeable risk" that a force-placed flood insurance customer would (1) believe that he could recover

damages against the insurer and (2) spend money to actually bring such a claim. *Artie's I*, 287

Conn. at 218 (noting that the alleged harm must be of the same general type as the foreseeable

risk created by the defendant's conduct). More generally, conduct that indirectly induces

erroneous litigation is unlikely to meet CUTPA's proximate cause standard. *Cf. Abrahams v.*

*Young & Rubicam, Inc.*, 240 Conn. 300, 308 (1997) ("The plaintiff has not alleged, nor can it be

reasonably inferred from the plaintiff's allegations, that Young & Rubicam either intended or

could have foreseen that, as a result of its attempt to bribe the plaintiff, he would be injured by an

erroneous indictment for bribery . . . ."). Indeed, "mere 'but for' causation is not sufficient to

support a CUTPA claim." *Id.* And Mr. Lewis alleges nothing more than that.

Accordingly, Mr. Lewis's costs related to the prior action are not recoverable under

CUTPA.

Mr. Lewis's claim for punitive damages likewise cannot support a CUTPA claim. *See*

*Parnoff v. Aquarion Water Co. of Conn.*, 188 Conn. App. 153, 182–83 (2019) ("[P]unitive

damages and attorney's fees, which are potential remedies available to a plaintiff once he meets

this threshold barrier and prevails on his CUTPA claim, cannot be the basis of demonstrating

ascertainable loss.").

Mr. Lewis has identified no other amounts that could qualify as an ascertainable loss

under CUTPA.

Accordingly, the Court will grant Defendants' motion to dismiss his CUIPA and CUTPA

claims.

### D.  Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(1), a party may amend a pleading once as a

matter of course within the earlier of (A) 21 days of serving it; or (B) if a responsive pleading is

required, 21 days after service of either a responsive pleading or a motion under Rule 12(b), (e), or (f). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court has broad discretion to decide a motion to amend. *See Loc. 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

"[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). *See also Kim v. Kimm*, 884 F.3d 98, 105–06 (2d Cir. 2018) ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying Kim leave to amend.").

As discussed above, the Court has not identified any cognizable claims in Mr. Lewis's Amended Complaint, and none of the deficiencies identified above can be cured by further pleading. Any claims, including claims against Assurant, based on American Security's sale of force-placed flood insurance on Mr. Lewis's property will be barred by claim preclusion. Any amendment with respect to Mr. Lewis's claims based on American Security's rate withdrawal letters to the Connecticut Insurance Department would fail for lack of proximate cause. These letters were sent to a state regulator, not to the borrower himself. Moreover, the alleged harm occurred only because, after Mr. Lewis failed to recognize that the programs mentioned in the letters were distinct from the program under which his flood insurance was issued, he made the

independent decision to bring a lawsuit against Assurant. For these reasons, any harm Mr. Lewis can allege as a result of these letters would not be "of the same general nature as the foreseeable risk created by" the rate withdrawal letters. *Artie's I*, 287 Conn. at 218.

        Accordingly, the Court will dismiss Mr. Lewis's Complaint with prejudice.

**IV.**    **CONCLUSION**

        For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** with prejudice. The motion to stay discovery is **DENIED as moot**.

        **SO ORDERED** at Bridgeport, Connecticut, this 30th day of September, 2022.

                              /s/ Victor A. Bolden
                              VICTOR A. BOLDEN
                              UNITED STATES DISTRICT JUDGE